Edward J. Goldbeck, d/b/a Woodside Realty, Appellee, v. Raymond Cieslik et al., Defendants. James Burns, and Catherine Burns, Defendants-Appellants, Raymond Cieslik, Defendant-Coparty Separate Appellant.

### Gen. No. 46,564.

First District, First Division.

April 18, 1955.

Released for publication May 23, 1955.

William T. Pridmore, of Chicago, for defendants-appellants; Winfred P. Regitz, of Chicago, for defendant-coparty separate appellant; Marion G. McClelland, of Chicago, of counsel.

John Jursich, Jr., of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Edward J. Goldbeck, a real estate broker doing business as Woodside Realty, brought suit against three

defendants, Raymond Cieslik, and James and Catherine Burns, to recover a commission of $1,175 allegedly earned by him as the proximate and procuring cause of the sale by the Burnses of their two-apartment building at 5854 North Mulligan avenue in Chicago to Raymond Cieslik in July 1952. Trial by jury resulted in a verdict for plaintiff and against "both defendants" for $200. Thereupon the court directed the clerk to enter the verdict as: "We, the Jury, find the issues against the Defendants, Raymond J. Cieslik, James Burns and Catherine Burns, and assess damages in the sum of Two Hundred and 00/100ths Dollars ($200.00)," and judgment was entered against the three defendants accordingly. Subsequently plaintiff filed a motion for judgment in his favor for $1,130 and costs, notwithstanding the verdict of the jury for $200, which the court sustained, and thereupon entered judgment against all three defendants for $1,130 and costs. Cieslik and the Burnses filed motions for a new trial contending that the trial judge erred in interpreting the original verdict of the jury against "both defendants" as meaning "the three defendants," and in assuming that instead of "$200" the jury meant "$1,130"; the motions were overruled. A direct appeal was taken by the three defendants to the Supreme Court of Illinois on the theory that the trial court's interpretation and modification of the verdict constituted an invasion of the exclusive province of the jury and therefore deprived defendants of their right of trial by jury, as guaranteed under Section 5 of Article II (Bill of Rights) of the State Constitution. The case was transferred here by the Supreme Court without opinion, thus indicating that no constitutional question was involved.

Plaintiff originally instituted this suit on October 8, 1952 as a first-class case in tort against Cieslik, alleging that the latter had been guilty of willfully tortious conduct by purchasing the building involved directly

530

from the owners, James and Catherine Burns, in order to circumvent the payment of a commission by obtaining the building at a lesser price. It was not until September 1953, nearly a year later, that plaintiff obtained leave to make the defendants, the Burnses, parties to the suit, and in Count II of the amended complaint sought a commission in the amount of $1,175 for procuring the sale of the building to the original defendant Cieslik.

Before the present suit was instituted, B. T. Lill, doing business as Lill Realty Company, had brought suit against James and Catherine Burns to recover $1,130 commission on the sale of the premises to Cieslik. In Lill v. Burns et al., 4 Ill.App.2d 588, we reversed the trial court and held that Lill had originally showed the property to Cieslik; that Cieslik refused to pay $25,000, the asking price at that time; that Lill thereafter abandoned the prospect, had nothing to do with Cieslik's later contact with the defendants, the Burnses, and was not the procuring cause of the sale.

The evidence in the instant case discloses that late in April 1952 Cieslik drove to plaintiff's office in response to a newspaper advertisement; that plaintiff took him to the Burns property, but that upon seeing it Cieslik informed plaintiff that he had already inspected that building, and that since it was not what he was looking for he did not care to see it again. In July Cieslik made his third trip to the property in response to an advertisement which read: "Home for sale by owner." He dealt with the Burnses directly, and they eventually agreed on a price of $22,600, being $2,400 less than had previously been asked. A deposit was made, and the sale was later consummated.

When plaintiff instituted this suit he did not sue Cieslik for commission; his suit was an action charging Cieslik with willfully tortious conduct in purchasing the building involved directly from the owners, the Burnses, in order to circumvent the payment of a com-

531

mission to plaintiff. No evidence whatever was adduced upon the hearing to support this charge, and the court indicated, in colloquy with counsel, that upon the facts presented there could be no recovery for such cause of action. Plaintiff testified that he did not make the Burnses defendants in the first instance because, after discussing the matter with them, he had the impression it was a mutual feeling that Cieslik was responsible inasmuch as he did not pay the full price for the building; plaintiff never asked the Burnses for a commission before he made them parties to the suit almost a year later. The evidence discloses that plaintiff represented the defendants, the Burnses, in selling a six-room bungalow for $17,500 and purchasing for them a two-flat building for $40,000. Both these deals constituted one transaction in which plaintiff was broker, for which he collected his commission, and which occurred between June and November of 1952. Plaintiff states that he had discussed the purchase of the building in question by Cieslik with the Burnses on several occasions, and knew they had been sued by Lill for commission in connection with the identical transaction, and that judgment had been entered against the Burnses in that proceeding in the trial court. In the course of the trial James Burns was called in his own behalf to testify concerning the Lill case and was asked the result of the suit. Plaintiff objected to the question. The trial judge then searched his notes and sustained the objection, stating that he found nothing in the record indicating the result in the case of Lill v. Burns, but plaintiff evidently knew that a judgment had been entered in Lill's favor in the suit wherein Lill claimed to be the procuring cause for the sale of the identical property on which plaintiff's suit was predicated.

After the Burnses had rested their case at what was then assumed to be the close of all the evidence, plaintiff advised the court that he had "very necessary re-

buttal evidence" in that it was "a matter of winning or losing the case." This conversation occurred on the Wednesday preceding the Thanksgiving week end, and the trial judge, having supposed that the case would be concluded Wednesday afternoon, was reluctant to continue it. He indicated that plaintiff would have to divulge the nature of the evidence or he would deny the continuance; whereupon plaintiff's counsel told the judge that the witness was Mr. or Mrs. Benedetto, the tenants in the second-floor apartment, who would testify that they saw Cieslik in the building on April 20, 1952 with plaintiff, and that this would completely impeach the testimony of Cieslik and that of the other defendants. A recess was then taken so that plaintiff could telephone the Benedettos. Thereafter plaintiff's counsel reported the telephone conversation, and the court inquired whether plaintiff had taken any other prospective purchasers up to the Benedetto apartment. Plaintiff replied: "No, that's the only one I took up to her apartment. . . . The only one I took up to the second floor, . . ." Thereupon the recess was taken until Friday, November 27, 1953, the day after Thanksgiving. After the hearing was resumed, plaintiff immediately rested without producing the Benedettos, and the defendants, the Burnses, made a motion to reopen proofs, which was granted. Mrs. Benedetto was called and testified that she had never seen plaintiff before Wednesday, November 25, 1953, some seventeen months after the sale had been made, and that the first time she had seen Cieslik was in July or August of 1952, when he came to her back door and served her with an owner's notice for possession of the apartment for his own purpose. Plaintiff's decision not to produce the Benedettos as his witnesses was a tacit admission on his part that he had not established a case against Cieslik. The testimony of Mrs. Benedetto, upon which he told the trial judge he relied for "winning or losing the case," ironically served to impeach plain-

tiff's testimony and his contention that he had secured Cieslik as a prospect.

■ Moreover, the judgment must be reversed for other reasons. In view of the nature of the complaint instituted by plaintiff, one count in tort against Cieslik and the second count in contract against the Burnses, it was error for the court to interpret the reference in the verdict to "both defendants" as indubitably meaning all three defendants; neither do we find any justification for raising the amount of the verdict from $200 to $1,130. It is impossible to ascertain from the verdict finding "both defendants" guilty which defendants were guilty of what. It is proper in some instances for the court, in receiving a verdict which is defective in form only, to endeavor to construe the intent of the jury, but the amendment of a verdict in all cases must be such as to make it conform to the real intent of the jury. In the instant case there is no way of ascertaining what the jury intended to find; nor do we find any authorities cited in plaintiff's brief justifying a change in the amount of damages fixed by the jury from $200 to $1,130.

■ In making his motion for judgment notwithstanding the verdict, plaintiff failed to file a motion for a new trial, as specified by Rule 63A of the municipal court; he thereby waived his right to move for a new trial. Hughes v. Bandy, 404 Ill. 74.

For the reasons indicated, the judgment of the municipal court is reversed, and judgment entered here in favor of all three defendants for costs.

Judgment reversed, and judgment entered here in favor of all defendants for costs.

BURKE, P. J. and NIEMEYER, J., concur.